Trenton R. Kashima (SBN 291405)
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU**
**& DeMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389

*Plaintiffs' Attorneys*
*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN SMITH, DAMANY BROWNE, JANET ROSS and MOHAMAD TLAIB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRADER JOE'S COMPANY, a California Corporation,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Kevin Smith, Damany Brown, Janet Ross and Mohamad Tlaib, individually and on behalf of all others similarly situated, ("Plaintiffs"), through their undersigned attorneys, bring this Class Action Complaint against Defendant Trader Joe's Company ("Defendant"), and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased the Trader Joe's branded "French Roast Low Acid" Whole Bean Coffee (the "Product").  The Product is sold by Defendant exclusively at its Trader Joe's stores throughout the country, particularly in California, Illinois, and New York.

2.      It is an industry standard that a coffee's caffeine levels are not highlighted on the product's label unless some process is used to reduce the amount of caffeine contained therein.  For example, full caffeinated coffee does not have any special labeling denoting that it is fully caffeinated, but "decaf" and "half-caff" coffees are labelled as such.

3.      Here, the Product does not disclose that it is "decaf" and "half-caff" coffee.  Testing, however, shows that the Product contains half of the caffeine as a regular coffee blend.  Accordingly, consumers purchase the Product believing that it is fully caffeinated when it is not.

4.      This is a material misrepresentation.  It is so common that it is now cliché that coffee drinkers depend on the caffeine contained therein to provide them with the energy they need to get through the day.  Accordingly, the amount of caffeine in a coffee blend affects a consumer's purchasing decision.  Additionally, for regular coffee drinkers, "decaf" and "half-caff" coffees are not a reasonable substitute for a morning fix.  Thus, these consumers would not purchase a "decaf"

1

and "half-caff" coffee as a replacement for their regular coffee or would pay less for the product.

5.    Defendant's prominent and systematic mislabeling of the Product and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harm the public and allows it to charge more for the Product.

6.    Plaintiffs bring this suit to halt Defendant's unlawful sales and marketing of its Product and for damages they sustained as a result of the fraudulent sales and misleading marketing. Injunctive relief is of particular importance given the likely consequences of Defendant's actions.

## PARTIES

7.    Plaintiff Kevin Smith ("Smith") is a citizen of the State of California, residing in Oakland, California. Plaintiff Smith has purchased the Product once per month for the last five years from the Trader Joe's store located at 3250 Lakeshore Ave., Oakland, California for between $7.99 and $9.99, with his last purchase being in March 2026.  In purchasing the Product, Plaintiff Smith saw, read, and reasonably relied on Defendant's packaging, labeling, and marketing, which stated that the Product was "Dark Roast, Smooth & Full Flavored" "LOW ACID" coffee, which was a "dark, rich brew with full, strong, flavors, but without the strong acidity." Plaintiff Smith was unaware that the Product did not contain significantly less acid than its competitors or that it was really "half caff" coffee, with only half of the caffeine as other similar coffee products.  Had Defendant disclosed that the Product was not low acid or was "half caff," Plaintiff Smith would not have purchased the Product or would have paid substantially less for it. Accordingly, Plaintiff Smith has suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct.  However, Plaintiff Smith would purchase the Product if it was low acid and had the same level of caffeine as other fully caffeinated coffees.

8.    Plaintiff Damany Browne ("Browne") is a citizen of the State of New York, residing in Brooklyn, New York. For the past four years, Plaintiff Browne

2

**CLASS ACTION COMPLAINT**

purchased the Product from the Trader Joe's stores located at 130 Court St, Brooklyn and Old Country Road, Garden City in New York for between $7.99 and $9.99. In purchasing the Product, Plaintiff Browne saw, read, and reasonably relied on Defendant's packaging, labeling, and marketing, which stated that the Product was "Dark Roast, Smooth & Full Flavored" "LOW ACID" coffee, which was a "dark, rich brew with full, strong, flavors, but without the strong acidity." Plaintiff Browne was unaware that the Product did not contain significantly less acid than its competitors or that it was really "half caff" coffee, with only half of the caffeine as other similar coffee products. Had Defendant disclosed that the Product was not low acid or was "half caff," Plaintiff Browne would not have purchased the Product or would have paid substantially less for it. Accordingly, Plaintiff Browne has suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct. However, Plaintiff Browne would purchase the Product if it was low acid and had the same level of caffeine as other fully caffeinated coffees.

9.      Plaintiff Janet Ross ("Ross") is a citizen of the State of New York, residing in Saint James, New York. For the past year, Plaintiff Ross purchased the Product from the Trader Joe's store located at Smith Haven Plaza, Lake Grove in New York for between $7.99 and $9.99. In purchasing the Product, Plaintiff Ross saw, read, and reasonably relied on Defendant's packaging, labeling, and marketing, which stated that the Product was "Dark Roast, Smooth & Full Flavored" "LOW ACID" coffee, which was a "dark, rich brew with full, strong, flavors, but without the strong acidity." Plaintiff Ross was unaware that the Product did not contain significantly less acid than its competitors or that it was really "half caff" coffee, with only half of the caffeine as other similar coffee products. Had Defendant disclosed that the Product was not low acid or was "half caff," Plaintiff Ross would not have purchased the Product or would have paid substantially less for it. Accordingly, Plaintiff Browne has suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct. However, Plaintiff Ross

3

**CLASS ACTION COMPLAINT**

would purchase the Product if it was low acid and had the same level of caffeine as other fully caffeinated coffees.

10.     Plaintiff Mohamad Tlaib ("Tlaib") is a citizen of the State of Illinois, residing in Oakland, California. Plaintiff Tlaib purchased the Product on a monthly basis for the past year, with his last purchase being in January 2026, from the Trader Joe's store located at 14924 S La Grange Rd, Orland Park, Illinois for between $7.99 and $9.99.  In purchasing the Product, Plaintiff Tlaib saw, read, and reasonably relied on Defendant's packaging, labeling, and marketing, which stated that the Product was "Dark Roast, Smooth & Full Flavored" "LOW ACID" coffee, which was a "dark, rich brew with full, strong, flavors, but without the strong acidity."  Plaintiff Tlaib was unaware that the Product did not contain significantly less acid than its competitors or that it was really "half caff" coffee, with only half of the caffeine as other similar coffee products.  Had Defendant disclosed that the Product was not low acid or was "half caff," Plaintiff Tlaib would not have purchased the Product or would have paid substantially less for it. Accordingly, Plaintiff Tlaib has suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct.  However, Plaintiff Tlaib would purchase the Product if it was low acid and had the same level of caffeine as other fully caffeinated coffees.

11.     Trader Joe's is a corporation organized and existing under the laws of the State of California with its principal place of business located in Los Angeles County, California. Defendant formulates, distributes, and labels the Product, which is sold through the United States, including California, New York and Illinois. Defendant further operates a number of retail locations, nationwide, where they sell the Product.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendant.  Defendant resides in California and purposefully avails itself of the California consumer market and distributes the Product to locations within this District and nearly two hundred

**CLASS ACTION COMPLAINT**

locations throughout California, where the Product is purchased by consumers every day.

13. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed class, any member of the class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Classes (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14. Venue is proper in this District under 28 U.S.C. § 1391(a). Defendant is headquartered and resides in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Product, occurred within this District and the Defendant conducts business in this District.

## FACTUAL ALLEGATIONS

15. Trader Joe's was founded in 1967 in Pasadena, California, developing into a small neighborhood grocery store that focuses on affordable and healthy foods and beverages. Trader Joe's stores focus on a smaller number of curated food products, including gourmet prepared foods, organic foods, vegan and vegetarian foods, frozen foods, imported foods, and domestic and imported wine and beer. Defendant markets itself as a trusted grocer that prides itself on great consumer service and high-quality products and reasonable prices.

16. To do so, Defendant sells many items under its own private labels at a significant discount to name-brand equivalents. By selling almost all of its products under its own labels, Defendant claims that it 'skips the middleman' and buys directly from both local and international vendors, resulting in better quality at lower

**CLASS ACTION COMPLAINT**

prices.  Accordingly, while Defendant may source its products from other vendors, it controls the packaging and labeling of the private labels on its shelves. Additionally, Defendant selects each of the products that bear its private label, including the quality and standards such products must adhere to.  These private labels are exclusively sold by Defendant.

17.　　One of these private labeled products is Defendant's "LOW ACID" French Roast Coffee.  This low acid offering is marketed as "low acid," yet still "smooth & full flavored" on the front label:



18.　　The back label makes similar claims, stating that the Product is a "dark, rich brew with full, strong, flavors, but without the strong acidity. Prior to a long, slow roast, the beans are treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor.  If you fantasize about the full flavors of dark roasted coffee, our Low Acid French Roast Coffee will make your dreams come true":

6

**CLASS ACTION COMPLAINT**



19.     Yet, this Product is not what it is represented.

**Defendant's Acid Reduction Process**

20.     Generally, coffee and caffeine are seen as a healthy alternative to high sugar and highly processed energy drinks.  Accordingly, coffee has become the second most consumed beverage globally after tea, with roughly 2.5 billion cups consumed daily.  Indeed, coffee is the second most traded commodity, following oil.

21.     While coffee (and caffeine there) is generally well tolerated, one of the main health drawbacks to the consumption of coffee is that it is acidic.  Accordingly, some consumers who have acid sensitivities, such as acid reflux, seek out lower acid alternatives to regular coffee.  This has led to the development of "low acid" coffees.

7

**CLASS ACTION COMPLAINT**

22.     Here, Defendant advertises its Product as "low acid" coffee that is "treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor."

23.     Acidity in a solution, such as coffee, is measured in pH. The pH scale goes from 0-14.  While neutral is measured as a seven, anything below seven is considered acidity (with everything above seven considered basic).  The lower the number is below seven, the more acidity the solution. In the human body, abnormal pH lies on either side of the 7.35-7.45 range.

24.     Generally, as noted by other coffee producers, "[m]ost coffees fall between a pH of 4.8 and 6.0."  *See* https://creaturecoffee.co/blogs/creature-feature-a-specialty-coffee-blog/a-brief-introduction-to-coffee-acidity                    & https://coffeehero.com.au/blogs/news/is-coffee-acidic (last visited March 30, 2026). And scientific studies seem to show the same. A 2024 study showing that dark roast coffee, such as the Product, ranging between 5.15-5.32, depending on the brewing process.       https://www.sciencedirect.com/science/article/pii/S0308814624013670 (last visited March 30, 2026).

25.     Testing of the Product shows that it has an average pH between 5.39 and 5.44.  Testing conducted as part of a lawsuit filed against Defendant in February 2025, *Puroast Coffee Company, Inc. v. Trader Joes Company*, No. 25-20696 (S.D. Fl.), found that the pH of the Product was 5.44 and independent testing conducted by Plaintiffs' counsel found that the pH was 5.39 using a potentiometric pH meter. Accordingly, at best, Defendant's Product is only slightly less acidic than the average cup of dark roast coffee, but well within the natural pH range expected for regular coffee.  But not the significant reduction that a reasonable consumer would expect of a "low acid" coffee.  Indeed, other coffee makers noted that low acid coffee will generally have a pH of closer to 6 (https://sfbaycoffee.com/blogs/articles/what-is-low-acid-coffee (last visited March 30, 2026)), with may noting that low acid coffee    must    at    least    have    a    pH    of    5.5    or    above    (

**CLASS ACTION COMPLAINT**

https://puroast.com/blogs/uncategorized/the-best-low-acid-coffee-the-essential-guide-faq (last visited March 30, 2026)).  And the FDA generally defines low acid foods as any food (other than alcoholic beverages) with a finished equilibrium pH greater than 4.6.  *See* https://www.fda.gov/food/guidance-documents-regulatory-information-topic-food-and-dietary-supplements/acidified-low-acid-canned-foods-guidance-documents-regulatory-information (last visited March 30, 2026)).

26.    Under any reasonable definition of low acid, Defendant's Product does not make the cut.  Instead, Defendant uses the "low acid" coffee moniker to increase its sales and to sell the Products at a price premium, deceiving and injuring consumers.

27.    Defendant states that this reduction is achieved by "natural steaming process."  However, while this steaming process does not significantly reduce the acid levels of coffee, it does have a significant effect on the caffeine levels of the Product.

**Defendant Misrepresents the Caffeine Levels in the Product**

28.    Generally, regular coffee has between 85 and 120mg of caffeine per 8-ounce cup depending on roast, bean variety, and brew method.  This caffeine is often prized by consumers, as coffee is commonly used as a mild stimulate, providing energy to consumers.  The caffeine in regular coffee is not added, but naturally occurring and intrinsic to the coffee bean used to create a brewed cup of coffee.

29.    On the other hand, decaf coffee has approximately 2 to 5mg of caffeine per 8-ounce cup and has gone through a decaffeination process to remove 97% of the caffeine.  Decaf is often used by those consumers that have a sensitivity to caffeine.  Because it has gone through a decaffeination process which is different from the normal coffee brewing process, decaf coffee is labelled as "decaffeinated" or "decaf."

30.    "Half Caff" is a relatively newer coffee product.  It is generally a 50/50 precent mix between regular coffee and decaf coffee beans.  Accordingly, "Half

9

**CLASS ACTION COMPLAINT**

Caff" coffee has approximately 40 to 60mg of caffeine per 8-ounce cup, or about half of the caffeine as a regular cup of coffee, giving it its monicker. Again, because of the reduction in the amount of caffeine that is native to coffee, "Half Caff" is labeled as such.

31. Defendant sources, labels, markets, advertises, and sells a wide range of food and beverages under its own brands, including a number of coffees. Defendant currently advertises and sells both fully caffeinated and decaffeinated (i.e. "decaf") coffees, and even at one point sold a "Half Caff" blend of its medium and decaf coffees. Accordingly, Defendant understands that the amount of caffeine in a coffee is material to consumers' purchasing decisions. Indeed, Plaintiffs understands that Defendant's fully caffeinated coffees sell substantially more units than Defendant's decaffeinated varieties. Plaintiffs are informed and believed that Defendant's "Half Caff" blend was discounted due to poor sales, as it was not a product valued or demanded by its consumers.

32. This is not surprising. According to market research, 79% of Americans drink caffeinated coffee, while only 10% drink decaf, and 10% drink both. Fully caffeinated coffee is demanded more by consumers, while decaf coffee is a relatively niche market.[1] Additionally, most consumers do not see decaf coffee as a substitute for fully caffeinated coffee. This is likely because coffee drinkers often enjoy the product for its taste, but more importantly for the stimulating effect of the caffeine contained herein. For example, a 2024 survey found that thirty percent of coffee drinkers drink coffee for the energy it provides, while another 30 percent drink it as part of their daily routine (i.e. a cup of coffee in the morning). Yet, only 21 percent drink coffee for its taste.[2] Another 2025 study found that the vast majority (70 percent) of caffeine drinkers are content with the amount they

---

[1] https://www.grandviewresearch.com/industry-analysis/decaf-coffee-market (last visited March 30, 2026).

[2] https://ific.org/wp-content/uploads/2024/03/IFIC-Spotlight-Survey_Caffeine.pdf (last visited March 30, 2026).

**CLASS ACTION COMPLAINT**

drink, with only 20 percent of daily coffee drinkers report wishing to reduce their overall caffeine consumption.  Thus, only 13% of consumers drink "Half Caff" coffee, with 52% of consumers stating that they either do not like "Half Caff" or are uninterested in the product.  And another 26% of consumers are generally unaware of the "Half Caff" coffees.[3]

33.    The amount of caffeine in coffee is clearly material to the average consumer, with the vast majority consumer preferring full caffeine coffee.  A fact that Defendant is well aware of, given the comparative sales between its coffee offerings.

34.    Defendant does not disclose that the Product contains half of the caffeine as normal caffeine.  Yet, this is the industry standard.  There is no special labeling for regular coffee because it is the standard form of coffee, with no additional processing which would affect its caffeine levels.  Instead, regular coffee is fully caffeinated so does not need to be marked as such.  Instead, only lower level of caffeinated coffees are specifically labeled as such, i.e. "decaf" or "half-caff."  This is because these products require additional process and are labeled accordingly.  This naming scheme is mirrored in other beverages.  Coke does not label Coke as fully caffeinated Coke, but it does label is decaffeinated Coke as such.

Here, by not labeling the product as "half-caff" consumers would expect that it would be fully caffeinated, just like all of its competitors.  Additionally, this misconception is only heightened by Defendant's other label statements.  Defendant uses language such as "dark roast," "full flavored," and "dark rich brew with full, strong, flavors" to describe its Product.  Such descriptors are often associated with regular coffee.

---

[3] https://civicscience.com/half-caff-coffee-offers-an-untapped-opportunity-as-some-americans-look-to-reduce-caffeine-intake/ (last visited March 30, 2026).

11

**CLASS ACTION COMPLAINT**

35.     This is particularly true as Defendant offers the Product among other similar regular caffeinated coffee with similar language but clearly marks its decaffeinated offerings.  For example, Defendant's regular, full caffeinated, French Roast coffee uses similar "strong" and "rich" verbiage as the Product:



Combined with the fact that consumers are aware of the industry standard of only disclosing the caffeine levels of lower caffeine products, this language gives consumers the impression that the Product is a fully caffeinated coffee.

36.     Despite labeling the Product in a similar fashion as a fully caffeinated coffee, the Product is really a "Half Caff" coffee.  Testing conducted by Defendant's competitors shows that the Product only has 51% of the caffeine of Trader Joe's Dark French Roast coffee, 45% of the caffeine of Trader Joe's House Blend coffee, and 45% of the caffeine of Puroast House Blend coffee.  This same testing shows that the Product has 17.8% less caffeine than Folger's half-caff brand and 24.5% less caffeine than Puroast's half-caff brand.  Defendant is well aware of this testing as it is in *Puroast Coffee Company, Inc. v. Trader Joes Company*, No. 25-20696 (S.D. Fl.).  Nevertheless, Defendant is still selling the coffee with the same labels.

37.     Plaintiffs have also tested the Product for its caffeine levels and found a similar result, showing that the Product had about 53% of the caffeine as Trader Joe's - Joe's Dark Coffee, a similar dark roast offered by Defendant and advertised as "regular" coffee.  This testing also confirmed that Defendant is masquerading a

**CLASS ACTION COMPLAINT**

"Half Caff" coffee as a fully caffeinated product.

38. Accordingly, Defendant misrepresents the caffeine content of the Product by omitting that it is really "Half Caff" coffee, without disclosing it as such. Additionally, by representing the Product as "full" and "rich," with similar labels as other fully caffeinated products on the same shelf, Defendant makes misrepresentations on the label of the Product which would lead a reasonable consumer to believe that it is a full caffeinated coffee.

39. Defendant knew or should have known the Product contained less caffeine than regular coffee. As noted above, Defendant was put on notice of this fact in the *Puroast* lawsuit. However, even before this legal action, Defendant likely tested the caffeine levels of its coffee products as part of its normal quality control procedures. Additionally, Defendant was likely aware that the deacidification process likely affected the caffeine levels of the Product.

40. Consumers are unable to discover the nature of Defendant's misrepresentation as they cannot examine the coffee before purchasing it, and testing the caffeine levels in a coffee involves scientific knowledge and equipment that is beyond the capabilities of a normal consumer. Indeed, consumers are unlikely to go through the effort and expense of testing the caffeine levels in a relatively low cost and mundane beverage. Instead, due to its testing of the Product, it was Defendant that had the exclusive knowledge of the caffeine levels of its Product and did nothing to disclose this information to the public.

41. Defendant's misrepresentations and omissions were likely to deceive reasonable consumers and the public. Defendant labeled its Product in the same manner as a fully caffeinated coffee, except it only contained half of the caffeine. Reasonable consumers expect to be told if coffee contains less than the normal amount of caffeine. Additionally, caffeine is one of the most prized, if not the most prized, attributes in a coffee product. Accordingly, Plaintiffs and the Class members suffered ascertainable economic losses because of Defendant's misconduct because

13

**CLASS ACTION COMPLAINT**

they bought the Product they otherwise would not have bought, or paid less for, but for Defendant's misrepresentations and omissions.

42. Even worse, because the Product is advertised as "low acid," consumers believe that they are receiving a lower acid alternative. While the Product is, at best, slightly less acidic than other coffee, it would take two cups to get the same amount of caffeine. Accordingly, people with acid sensitivities must drink more of this "low acid" Product to get the same stimulating effect as a normal cup of coffee. This likely exposes consumers to even more acid than if they just drank a single regular cup of coffee.

43. Defendant's misrepresentations, omissions, and/or concealment of material information are ongoing and continuing to cause harm. Defendant continues to label the Product as a fully caffeinated coffee, when it is not.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this class action lawsuit on behalf of themselves and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

45. Plaintiffs seek certification of the following Classes:

**California Class:** All persons in the State of California who purchased the Product in the four years preceding the filing of this Complaint for personal use and not for resale.

**New York Class:** All persons in the State of New York who purchased the Product in the four years preceding the filing of this Complaint for personal use and not for resale.

**Illinois Class:** All persons in the State of Illinois who purchased the Product in the four years preceding the filing of this Complaint for personal use and not for resale.

Members of the classes described are referred to as "Class Members" or members of the "Classes."

46. The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's

14
**CLASS ACTION COMPLAINT**

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

47.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

49.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a.    Whether Defendant explicitly or implicitly claimed that its Product was fully caffeinated when it is not;

b.    Whether Defendant warranted that the Product was fully caffeinated when it is not;

15

**CLASS ACTION COMPLAINT**

c.  Whether Defendant knew or should have known that the representations and advertisements regarding the Product was false and misleading;

d.  Whether Defendant's conduct violates public policy;

e.  Whether Defendant's acts and omissions violate California law;

f.  Whether Defendant's acts and omissions violate New York law;

g.  Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Product;

h.  Whether the Plaintiffs and the Class Members suffered monetary damages and, if so, what is the measure of those damages;

i.  Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

50.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

51.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

52.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are

16

**CLASS ACTION COMPLAINT**

members of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

53. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(On Behalf of Plaintiff Smith, and the California Class)**

54. Plaintiff Smith ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

55. Plaintiffs bring this claim individually and on behalf of all members of the California Class against Defendant.

17

**CLASS ACTION COMPLAINT**

56. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

57. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

58. <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

    a. The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

    b. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

    c. The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; as incorporated into California law in the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

59. <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Product was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

60. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act, the False Advertising Law, the FDCA, and the California Sherman Food, Drug, and Cosmetic Law. As described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

61. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is unfair because the consumer injury was substantial, not

CLASS ACTION COMPLAINT

outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

62. Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

63. As set forth in detail above, Defendant has made false and misleading statements that are likely to mislead reasonable consumers to believe the Product has been scientifically established to be effective, which it have not been.

64. Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

65. Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

66. Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members. Plaintiffs have suffered injury in fact as a result of Defendant's unlawful conduct, by paying more for the Product than they otherwise would have, or not purchasing it altogether.

67. In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

68. As a direct and proximate result of Defendant's conduct in violation of the UCL, Plaintiffs and the members of the Class have suffered injury-in-fact and lost money or property, in that they paid for a Product that they would not have otherwise purchased, and/or paid a price premium for a Product that they would not otherwise have paid.

69. Plaintiffs and the Class Members do not have an adequate remedy at

**CLASS ACTION COMPLAINT**

law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action.

70.     Plaintiffs and the Class Members seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

<u>COUNT II</u>
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of Plaintiff Smith, and the California Class)**

71.     Plaintiff Smith ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs bring this claim individually and on behalf of the members of the California Class against Defendant.

73.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

74.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

75.     As alleged in detail above, the advertisements, labeling, policies, acts,

20

**CLASS ACTION COMPLAINT**

and practices of Defendant relating to the Product misled consumers acting reasonably as to the caffeine levels of the Product.

76. Plaintiffs suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the Product in reliance on Defendant's labeling claims.

77. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

78. Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

79. As a result, Plaintiffs, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

80. As a direct and proximate result of Defendant's conduct in violation of the UCL, Plaintiffs and the members of the Class have suffered injury-in-fact and lost money or property, in that they paid for a Product that they would not have otherwise purchased, and/or paid a price premium for a Product that they would not otherwise have paid.

81. Plaintiffs and the Class Members do not have an adequate remedy at law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action.

82. Plaintiffs and the Class Members seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by

21

**CLASS ACTION COMPLAINT**

Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**COUNT III**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of Plaintiff Smith, and the California Class)**

83. Plaintiff Smith ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84. Plaintiffs bring this claim individually and on behalf of the members of the California Class against Defendant.

85. Defendant is a "person" under the Legal Remedies Act, Cal. Civ. Code § 1761(c).

86. Plaintiffs and Subclass members are "consumers" under the Legal Remedies Act, Cal. Civ. Code § 1761(d).

87. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

88. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

89. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

90. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

91. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

22
**CLASS ACTION COMPLAINT**

92.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

93.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

94.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

95.   Pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiffs and the Class seek an order enjoining Defendant from continuing to engage in the unlawful practices described herein. Plaintiffs and the Class also seek injunctive relief requiring Defendant to engage in a corrective advertising campaign and to implement a new, adequate recall program that provides a full refund to all affected consumers.

96.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), concurrently with the filing of this complaint, Plaintiff Smith mailed Defendant a letter providing notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing Defendant with the opportunity to correct its business practices. Likewise, Plaintiffs Browne, Ross and Tlaib gave notice to Defendant about its breach of express warranties. If Defendant fails to correct such violations, Plaintiffs intend to amend their complaint thirty days after Defendant's receipt of the letter.

## COUNT IV
### Violation of New York General Business Law § 349
### (On Behalf Of Plaintiffs Browne, Ross and the New York Class)

97.   Plaintiffs Browne and Ross ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

98.   New York Business Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 349.

99.   Defendant's actions occurred in the conduct of business, trade, or

**CLASS ACTION COMPLAINT**

commerce.

100.    Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

101.    Defendant's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Product's attributes as a coffee product, its caffeine levels.

102.    Defendant's conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of Defendant's deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing Defendant's Product, constitute conduct directed at consumers.

103.    As purveyors of coffees in its stores, Defendant knows that when it comes to coffee, caffeine matters.

104.    Defendant chose to label the Product in this way to impact consumer choices, as it is well aware that all consumers who purchased the Product were exposed to the aforementioned representations and would reasonably believe from these representations that the Product was fully caffeinated.

105.    As described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

106.    Plaintiffs and the New York Class Members suffered damages when they purchased the Product. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and the New York Class Members.

107.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiffs and putative New York Class Members.

24
CLASS ACTION COMPLAINT

108.    As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Plaintiffs and New York Class Members have been damaged as alleged herein, and are entitled to recover the greater of actual damages or $50, to the extent permitted by law, including class action rules, in an amount to be proven at trial.  Additionally, Plaintiffs claim that Defendant willfully or knowingly violated the law and is entitled to appropriate increase in damages, in an amount up to $1,000.

109.    In addition, Plaintiffs Browne and Ross and New York Class Members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## COUNT V
**Violation of New York General Business Laws § 350**
**(On Behalf Of Plaintiffs Browne, Ross and the New York Class)**

110.    Plaintiffs Browne and Ross ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

111.    New York Business Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. GEN. BUS. LAW § 350.

112.    Defendant's actions occurred in the conduct of business, trade, or commerce.

113.    Defendant's foregoing acts and practices, including its advertising, were directed at consumers.

114.    Defendant's conduct, as described in this Complaint, constitutes "false advertising" within the meaning of the New York GBL, as Defendant publicly disseminated misleading and false advertisements through advertising and marketing statements, suggesting the Product was a fully caffeinated coffee.

115.    Defendant's foregoing, consumer-oriented, unfair or deceptive acts and

25
**CLASS ACTION COMPLAINT**

practices, including its advertising, representations, and omissions, constitute false and misleading advertising in a material way in violation of the New York's General Business Law § 350.

116. As purveyors of coffees in its stores, Defendant knows that when it comes to coffee, caffeine matters.

117. Defendant chose to label the Product in this way to impact consumer choices, as it is well aware that all consumers who purchased the Product were exposed to the aforementioned representations and would reasonably believe from these representations that the Product was fully caffeinated.

118. As described herein, Defendant's false, deceptive and misleading label statements violate 21 U.S.C. § 343(a)(1) and the statutes adopted by many states, which deem food misbranded when "its labeling is false or misleading in any particular."

119. Plaintiffs and the New York Class Members suffered damages when they purchased the Product. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs and the New York Class Members.

120. Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiffs and putative New York Class Members.

121. As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Plaintiffs and New York Class Members have been damaged as alleged herein, and are entitled to recover the greater of actual damages or $500, to the extent permitted by law, including class action rules, in an amount to be proven at trial. Additionally, Plaintiffs claim that Defendant willfully or knowingly violated the law and is entitled to appropriate increase in damages, in an amount up to $10,000.

122. In addition, Plaintiffs and New York Class Members seek equitable and

26

**CLASS ACTION COMPLAINT**

injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**COUNT VI**
**Violation Of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA")**
**815 ILCS 505/1, *et seq.***
**(On Behalf Of Plaintiff Tlaib and the Illinois Class)**

123.   Plaintiff Tlaib ("Plaintiffs" for the purposes of this section) reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

124.   Plaintiffs and other Illinois Class members are persons within the context of the ICFA, 815 ILCS 505/1(c).

125.   Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

126.   At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f). 183.

127.   Plaintiffs and the proposed Illinois Class are "consumers" who purchased the Product for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

128.   The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…."  ICFA, 815 ILCS 505/2.

129.   The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act.  815 ILCS § 505/2. Plaintiffs and the other Illinois Class members reasonably relied upon Defendant's representation that the Product was full caffeinated coffee.

130.   Defendant's conduct, as described herein, constitute unfair or deceptive

**CLASS ACTION COMPLAINT**

acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq*.

131.   Defendant violated the ICFA by representing that the Product has characteristics or benefits that it does not have.  815 ILCS § 505/2; 815 ILCS § 510/2(7).

132.   Defendant advertised the Product with intent not to sell ir as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

133.   Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

134.   Defendant engaged in misleading and deceptive advertising that represented that the Product was full caffeinated coffee.  Defendant chose to advertise and label the Product in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Product were exposed to and would be impacted by its misrepresentation/omission and would reasonably believe that the Product stored was full caffeinated coffee.

135.   Defendant intended that Plaintiffs and each of the other Illinois Class members would reasonably rely upon its misrepresentations, characterizations, warranties, and material misrepresentations concerning the true nature of the Product.

136.   Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and each of the other Illinois Class members to be deceived about the true nature of the Product.

137.   Plaintiffs and Illinois Class members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Product.

138.   As a direct and proximate result of Defendant's violations, as set forth

28

**CLASS ACTION COMPLAINT**

above, Plaintiffs and the Illinois Class members have suffered ascertainable loss of money caused by Defendant's misrepresentations.

139. Had they been aware of the true nature of the Product, Plaintiffs and Illinois Class members either would have paid less for the Product or would not have purchased them at all.

140. Plaintiffs and the Illinois Class members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiffs and Illinois Class members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT VII**
**Breach of Express Warranty**
**(On Behalf Plaintiffs and the California, New York and Illinois Classes)**

141. Plaintiffs repeat and re-allege the allegations above as if set forth herein.

142. Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time Plaintiffs and each member of the Classes purchased the Product.

143. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above.

144. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

145. Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

146. Defendant breached express warranties about the Product and its

**CLASS ACTION COMPLAINT**

qualities because Defendant's Product's representations, purports the Product is full caffeinated when it is not.

147. Plaintiffs and each of the members of the Classes would not have purchased the Product had they known the Product was not full caffeinated.

148. Plaintiffs relied upon the representations made by Defendant at the time of purchase and were deprived of the benefit of the bargain as a result of Defendant's conduct.

149. Concurrently with the filing of the complaint, Plaintiffs Browne, Ross and Tlaib gave notice to Defendant of its breach of express warranties.

150. Within 30 days, Defendant did not cure, remedy, or otherwise provide relief regarding its breach of express warranty for Plaintiffs.

151. As a result of Defendant's breach of warranty, Plaintiffs and each of the members of the Classes have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A. Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representative, and designating the undersigned as class counsel;

B. Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no money damages are presently sought for violations of the California Consumers Legal Remedies Act, mentioned herein;

C. Declare that Defendant is financially responsible for notifying all Class members of the mislabeling and misbranding of the Product;

D. Declare that Defendant must disgorge, for the benefit of the Class, all

**CLASS ACTION COMPLAINT**

or part of the ill-gotten profits it received from the sale of the Product, or order Defendant to make full restitution to Plaintiffs and the members of the Class, except that no money damages are presently sought for violations of the California Consumers Legal Remedies Act;

E.   Defendant shall audit and reassess all prior customer claims regarding the Product, including claims previously denied in whole or in part;

F.   An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

G.   Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.   Grant such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: April 23, 2026                    **BRYSON HARRIS SUCIU & DeMAY PLLC**


By: */s/ Trenton R. Kashima*
    Trenton R. Kashima (SBN 291405)
    19800 MacArthur Blvd., Suite 270
    Irving, CA 92612
    Tel: (212) 946-9389
    tkashima@brysonpllc.com

31
**CLASS ACTION COMPLAINT**